UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ROBERTO ZAIZA,<br><br>             Plaintiffs,<br><br>      vs.<br><br>CLARK, et al.,<br><br>             Defendants. | **1:19-cv-01476-DAD-GSA-PC**<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED WITH PLAINTIFF'S CLAIMS AGAINST DEFENDANTS CLARK, GALLAGER, AND BAUGHMAN FOR INUFFICIENT ACCESS TO OUT-OF-CELL EXERCISE IN VIOLATION OF THE EIGHTH AMENDMENT, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED FOR FAILURE TO STATE A CLAIM**<br><br>**FOURTEEN-DAY DEADLINE TO FILE OBJECTIONS** |

## I.   PROCEDURAL BACKGROUND

Jose Roberto Zaiza ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on October 17, 2019.  (ECF No. 1.)  On September 28, 2020, the court dismissed the Complaint for failure to state a claim, with leave to amend.  (ECF No. 10.)  On October 21, 2020, Plaintiff filed the First Amended Complaint, which is now before the court for screening.  (ECF No. 11.)  28 U.S.C. § 1915.

## II.   SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  While factual allegations are accepted as true, legal conclusions are not.  Id.  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

## III.  SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at Corcoran State Prison (CSP) in Corcoran, California, in the custody of the California Department of Corrections and Rehabilitation where the events at issue in the First Amended Complaint allegedly took place.  Plaintiff names as defendants Ken Clark (Warden), D. Goss (Associate Warden), L.C. Hence (Chief Deputy Warden), M. Gamboa (Chief Deputy Warden), Sergeant P. Perez, Sergeant J. Navarro, Lieutenant C. Brown, Captain Llamas, Captain J. Gallager, D. Baughman (CDCR Acting Associate Director), and Does #1-10 (collectively, "Defendants").

In or about June 2008, Plaintiff was sentenced to 75 to life to be served within the CDCR.  In or about July 2008, while confined in North Kern State Prison, CDCR classified Plaintiff as

a member of a "Southern Hispanic" disruptive group.  The CDCR has previously admitted this classification is a race-based classification in R. Mitchell v. Cate, et al., Case No. 2:08-cv-01196-TLN-EFB, 10/14/2015, Doc. No. 332-1 (E.D. Cal.).

On January 18, 2013, in the case In Re Haro, FCR282399,[1] the Solano County Superior Court held that CDCR's lockdown and/or modified program policy could not survive a strict-scrutiny analysis as required by the United States Supreme Court's decision in Johnson v. California, 543 U.S. 499, 125 S.Ct. 1141 (2005), ordering that CDCR's classification system must, at minimum (1) preclude an inmate's inclusion in a specific classification based on ethnic or geographical background alone, and (2) preclude arbitrary classifications that unduly focus on certain ethnicities while wholly ignoring others.  (ECF No. 11 at 10:14-17.)  As a result of the ruling, Plaintiff's classification changed from "Southern Hispanic" to Security Threat Group (STG) Surenos.  Plaintiff alleges that CDCR continues to use race and ethnicity to classify Plaintiff and other inmates contrary to the Court's In re Haro order.  For example, Black inmates who were previously classified as "Black-Crips" and "Black-Bloods" are now classified as "STG Bloods" and "STG Crips."  Plaintiff alleges that CDCR Defendants continue to utilize race and ethnicity to racially classify Plaintiff and all inmates into "STGs," contrary to the Haro court's order.

On September 28, 2018, during morning tray pickup in Building 3C02, approximately five STG Bulldogs attacked ten STG Surenos with inmate-manufactured weapons.  Due to the STG Bulldogs' unprovoked attack on the STG Surenos, staff was required to use a 40 MM launcher MK-90 OC pepper spray and OC instantaneous blast grenades to quell the incident.  Plaintiff was housed in Building 3C03 and was not involved in the incident.

In spite of the incident, defendants Clark, Gallager, and Baughman refused to impose a "State of Emergency" and instead placed all Facility C inmates on a Modified Program in order to facilitate inmate interviews, searches, and intelligence gathering, and then attempted to return all inmates, other than STG Bulldog and STG Surenos, back to a Normal Program.

---

[1] In Re Haro, Solano County Super. Ct. No. FCR282399, 2014 WL 1233117, 2014 Cal. App. Unpub. LEXIS 2146 (Court of Appeal, First District, Division 2, California) (Mar. 26, 2014).

///

On October 10, 2018, an administrative decision was made by defendants Clark, Gallager, and Baughman to resume a Normal Program for all uninvolved inmates (STG Bloods/Crips, STG Nazis/Skinheads, STG Asian Gangs), while Plaintiff and all similarly situated racially classified STG Surenos and Bulldogs were subjected to Defendants' Modified Program.

Plaintiff alleges that all of the Defendants who signed/dated PSRs[2] from September 28, 2018 to date – D. Baughman, Ken Clark (Warden), D. Goss (Associate Warden), L.C. Hence (Chief Deputy Warden), M. Gamboa (Chief Deputy Warden), Sergeant P. Perez, Sergeant J. Navarro, Lieutenant C. Brown, Captain Llamas, and Captain J. Gallager -- approved restrictions by the race-based Modified Program for work/education, attending self-help programs, (e.g., NA, AA, higher education classes, GOGI Lifers Group, mandated substance abuse program (SAP), which are mandated by Board of Prison Terms for parole considerations), restriction of canteen, dayroom telephone calls, visits, family visits, packages, restricted visits-- even behind glass, religious services, and other restrictions.  Defendants informed Plaintiff and race-based Modified Program inmates to hold their own in-cell religious services.  Defendants suspended physical access to the law library except for inmates who can produce court ordered verified court filing deadlines.

Defendants only allowed Plaintiff one shower every third day in boxers and shower shoes only.  Plaintiff was cell-fed prior to the race-based Modified Program and Defendants only permitted Plaintiff to receive health care services for medical/dental services.  Defendants only permitted Plaintiff and race-based Modified Program inmates access to health care services because of court orders from Plata v. Brown/Newsom, Coleman v. Brown/Newsom, and Perez v. Brown/Newsom.

Defendants' Modified Program mandates that inmates be strip searched and wanded with a metal detector prior to being escorted in restraints to medical/dental visits and the law library. Plaintiff alleges that not once did any correctional officer conduct an unclothed body search or wand Plaintiff with a hand-held metal detector prior to going to any of the above appointments.

[2] Program Status Reports.

4

///

The only time Plaintiff was subjected to a metal detector search was after exiting his cell prior to going to staggered interval for out-of-cell exercise.

Under the program, Plaintiff was deprived of out-of-cell exercise and sunshine from September 28, 2018 through July 8, 2019, and from August 24, 2019 through the present date. Approximately fifteen days after the incident, Defendants D. Baughman, Ken Clark (Warden), D. Goss (Associate Warden), L.C. Hence (Chief Deputy Warden), M. Gamboa (Chief Deputy Warden), Sergeant P. Perez, Sergeant J. Navarro, Lieutenant C. Brown, Captain Llamas, Captain J. Gallager, and Does #1-10 started to provide Plaintiff (and some other Surenos) with sporadic opportunities for out-of-cell exercise, as follows:

October 2018

      11th    1 hr. 45 min.

      18th    1 hr. 30 min.

      25th    1 hr. 30 min.

November 2018

      1st    1 hr. 30 min.

      21st    2 hr. 0 min.

      29th    1 hr. 0 min.

December 2018

      7th    2 hr. 30 min.

      27th    2 hr. 0 min.

January 2019

      15th    3 hr. 0 min.

      29th    2 hr. 0 min.

February 2019

      8th    2 hr. 0 min.

      27th    0 hr. 35 min.

March 2019

8th      0 hr. 50 min.

18th     2 hr. 15 min.

On or about March 25, 2019, defendant Gallager informed STG Surenos MAC[3] Representative that they had received information from STG Surenos housed in different prisons that Facility C planned to stage a peaceful protest against the race-based Modified Program and its restrictions by refusing to lock it up after a yard recall until prison officials spoke with the MAC Representative.  This was false information and was not a plan that Plaintiff nor the Facility C Surenos intended to implement.  Because of this false information, which defendant Warden K. Clark found credible, defendants Clark, Gallager, and Baughman imposed additional restrictions on yard time for Surenos as follows:

April 2019

2nd      2 hr. 10 min.

May 2019

13th     2 hr. 30 min.

On or about January 6, 2019, the above Defendants eased a third restriction by allowing Modified Program inmates to purchase only hygiene items from canteen, but no food items or stationery.  Again, disciplinary inmates in Corcoran's Ad-Seg/ASU, SHU, and PHU are permitted to purchase and receive all the above including packages, as mandated by CDCR regulations.

On or about November 27, 2018, defendants Baughman, Clark, Goss, Hence, Gallager, and Gamboa started releases of STG Bulldogs and STG Surenos based on "low risk" assessments of these inmates in an effort to return the inmates back to Normal Program.  However, these incremental releases between November 27, 2018 and June 6, 2019, were actually orchestrated and set-up gladiator-style fights/assaults.

Between September 28, 2018 through October 10, 2018, Defendants had "intelligence gatherings" from their confidential sources or snitches, and concluded that the STG Surenos were the victims in the September 28, 2018 incident, and STG Bulldogs were the obvious aggressors,

---

[3] Men's Advisory Council.

///

and the issues and problems between Surenos and Bulldogs will not be resolved and the violence between the two groups will continue.

Defendants Baughman, Clark, Goss, Hence, Gallager, Perez, Navarro, Brown, Llamas, and Gamboa approved and conducted sixteen gladiator style fights. From July 20, 2019 to August 27, 2019, highly trained professional building tower control officers would intentionally open Modified Program STG Bulldog inmates' cell doors while Normal Program STG Surenos inmates were released for breakfast, dinner, or yard, resulting in more gladiator style fights. Officers C/O Hernandez, A. Rocha, and another control booth officer conducted gladiator fights, falsified reports and fabricated documents by stating that the doors were "accidental openings."

On August 19, 2019, Plaintiff was housed in Building 3 when Officer A. Rocha was in the control booth tower and opened a cell housing two STG Bulldogs when Plaintiff and other STG Surenos were walking to dinner. Officers Rocha, Sarmiento, and Cruz reported that STG Surenos were walking towards the door that leads outside when C/O Rocha accidentally opened the STG Bulldogs' cell door. STG Bulldogs attacked STG Surenos. Due to false reports, STG Surenos were charged with battery. At no time did Plaintiff come into contact with the STG Bulldogs. OC pepper spray was used. Plaintiff still receives medical treatment for injuries to his right knee and had surgery and therapy.

Plaintiff filed appeals complaining about the Modified Program. Defendants Navarro and Brown were interviewers, and defendants Goss and Hence signed off on appeals. At Plaintiff's second level of appeals, filed on 2/22/2019, Plaintiff was interviewed by defendant Lt. C. Brown.

Due to lack of opportunity to exercise outdoors, Plaintiff suffered from migraine headaches, pain in his head, neck, and shoulder, muscle atrophy, lethargy, and sensitive eyes. Plaintiff had two surgeries and received physical therapy.

CDCR and Defendants Clark, Goss, Hence, Gamboa, Perez, Navarro, Brown, Llamas, and Gallager actions were contrary to the dictates of the Haro decision which, inter alia, ordered: "preclude an inmates race/ethnicity in a specific classification" (e.g., Southern Hispanic), and the Mitchell settlement agreement mandating "CDCR will not implement race-based Modified

Program of lockdowns, lockdowns or Modified Program may be (1) imposed on all inmates and lifted from all inmates in the affected area or (2) imposed and lifted from inmates in the affected area based on individualized threat assessment, but (3) may not be imposed or lifted based on race or ethnicity" (Mitchell v. Cate, Doc. No. 322-1 settlement agreement, p. 5 of 22). The CDCR also agreed to "revise its policies concerning modified programs and lockdowns . . ." (id. p. 22:20). In addition, the Mitchell settlement agreement makes no allowance for race-based Modified Programs or lockdown even when there are emergency situations arising from race-based violence (Id.:15-24).

Plaintiff alleges that during the first race-based Modified Program between September 28, 2018 and July 6, 2019, defendants Clark, Goss, Hence, Gamboa, Perez, Navarro, Brown Llamas, and Gallager intentionally refused to adhere to the Mitchell settlement agreement terms and conditions. The CDCR and Defendants only adhered to the Haro court's orders by making changes from "Southern Hispanic" to STG Surenos, with similar name changes for the "Northern Hispanics," "Black Crips, and "Black Bloods," who are now classified as STG Nortenos, STG Bloods, and STG Crips. Contrary to the Haro court order, CDCR continues to utilize race and ethnicity in classifying CDCR inmates. Plaintiff alleges that more than 99% of STG Surenos are Mexican, Mexican-descent Chicanos, or from Latin American countries.

Contrary to Mitchell's settlement agreement, Plaintiff should not have been subjected to the Modified Program based on race because he was not involved in the September 28, 2018 incident. And, contrary to the Haro court order and the Mitchell settlement agreement, to revise policies using race as a factor for classifying its prisoners, all that the CDCR and Defendants did was drop the "Hispanic" from "Southern Hispanic," "Northern Hispanic," and "Bulldog Hispanic" and added "STG Sureno, STG Norteno, and STG Bulldog, and the same for Black-Bloods/Crips, which are now STG Bloods and STG Crips. CDCR defendants presume a "racial obligation" to one of the 4 prison gangs enforcing policies that Plaintiff, as a STG Sureno, is automatically subservient to the EME/Mexican Mafia, that STG Nortenos are subservient to the Nuestra Familia, STG Bloods/Crips to the Black Guerrilla Family, and STG Nazi/Skinheads and other white hate groups to the Aryan Brotherhood.

///

Plaintiff alleges Defendants' race-based Modified Program policies go overboard because they unnecessarily subject Plaintiff to restrictions/deprivations based solely on his classification as a STG Sureno, that the Modified Program was not narrowly tailored to the facts, that Plaintiff lost more freedoms and privileges as a Modified Program inmate in the September 28, 2018 incident, along with all the orchestrated gladiator-style fights.  This is all contrary to Plaintiff identifying and informing Defendants of available, workable, race-neutral alternatives to the restrictions/deprivations in his administrative appeals.  Plaintiff alleges that Defendants refused to make any good-faith efforts to ease any restrictions until about six to seven months into the first race-based Modified Program in March or April 2019.

Plaintiff further alleges that during the first race-based Modified Program between September 28, 2018 and July 6, 2019, Defendants K. Clark, D. Goss, L.C. Hence, M. Gamboa, P. Perez, J. Navarro, C. Brown, P. Llamas, and J. Gallager preferentially treated Black inmates classified as STG Blood and STG Crips differently from Plaintiff and all other STG Surenos because Defendants are prejudiced and biased.

About December 2018, STG Bloods and STG Crips were involved in a riot with each other that involved approximately 30 to 40 STG Bloods and STG Crips.  A code 3 was broadcast over the prison communications wherein staff from other facilities respond to the riot in riot gear and weapons in an attempt to quell the riot and/or assist in maintaining security if the riot was quelled prior to their arrival.  In this incident Facility "C" S&E and responding staff quelled this riot using the force of 40MM Launches MK9 O.C. spray and O.C. instantaneous blast grenades, and secured inmates in flex-cuffs.  Defendants named above all refused and failed to subject STG Bloods and Crips to a Modified Program in order to facilitate interviews, searches, and intelligence gathering, and instead returned all STG Bloods and STG Crips back to normal programming later that evening.

Plaintiff brought this equal protection violation to the attention of defendant Sgt. J. Navarro on January 24, 2019 during FLR Interview.  Plaintiff addressed this incident and the return to normal programming.  Defendant Navarro responded stating it was an "isolated

incident."

Then on January 23, 2019, during a cell-swap in Building 3, six STG Bulldogs attacked two STG Crips with weapons, and staff was required to use force to quell this incident. Defendants refused to place the STG Crips on a Modified Program even though the situation was identical to that of the STG Surenos on September 28, 2018.  Instead, Defendants returned STG Crips to a Normal Program later that day and sterilized the documentation of this incident in PSR Cor-03C-18-006 (attached with 602).

On March 3, 2019, when Plaintiff addressed the above equal protection information, Defendant Perez stated, "Oh, well, it is what it is."  When Plaintiff received the FLR 602 appeal back, the PSR was attached to the appeal.  Plaintiff alleges that Defendant P. Perez acted "frivolous or malicious" due to the fact that the PSR has nothing to do with Plaintiff's appeal.

Then, on or about March 18, 2019, STG Bloods assaulted staff, and Defendants subjected all STG Bloods to a Modified Program for only one week! and then they were returned to Normal Programming.  Plaintiff alleges that had it been STG Surenos who assaulted staff, all STG Surenos would have been subjected to a Modified Program for at least eight months in order to facilitate interviews, searches, and intelligence gatherings, and C/Os would have destroyed Surenos' cells and property as is the custom by C/Os for staff assaults.

Plaintiff alleges that he was purposely discriminated against and Defendants' treatment of Plaintiff, compared to the treatment of similarly racially-classified STG Black inmates, was not reasonably related to legitimate penological interests or goals.

On the day of a gladiator fight orchestrated by A. Rocha on August 19, 2018 in which Plaintiff suffered injuries, C/O Hamleton assisted Plaintiff off the floor due to knee damage. Plaintiff is an ADA patient and slipped in OC pepper spray.  Defendant Perez, who was in charge, and C/O Hamelton stated, "Hey, Legal Beagle,[4] that's a freebee," meaning that Plaintiff would not be issued a serious RVR report.  The following day Plaintiff filed a staff complaint against A. Rocha.  Plaintiff believes that his filing of the staff complaint is the reason officers fabricated

---

[4] Plaintiff states that he was given the aka moniker "Legal Beagle" by defendants Perez and Gallager after Plaintiff received a settlement in one of his cases in November 2018.  (ECF No. 11 at 23 f.n.3.)

an RVR Report and charged Plaintiff with battery the following week.

Plaintiff alleges that defendant Perez violated Title 15 Rules and Regulations during the interview for the staff complaint because he is not supposed to interview if he was the reporting officer. Perez stated, "You're right," and the interview had to start over with a new officer. Plaintiff alleges that defendant Perez had malicious intent to either cover up the staff complaint or trash it. Plaintiff requested the medical report but has not received it.

Plaintiff claims that he suffered from emotional distress, loss of sleep, harm, and injuries suffered due to deprivation of out-of-cell exercise. Plaintiff further alleges that Defendants and this court are familiar with Corcoran State Prison's history and habit, routine, and practice of setting up gladiator style fights in its SHU Group Yard during 1992-1995, which resulted in settlements, the firing of prison officials, and/or early "retirements," which was named the Green Wall.

As relief, Plaintiff requests declaratory relief, compensatory and/or punitive damages, attorney's fees, appointment of counsel, and costs of suit. Plaintiff also requests the court to retain jurisdiction over this lawsuit until Defendants and/or CDCR have complied with the court's orders and/or terms of a settlement agreement and there is reasonable assurance that Defendants and/or the CDCR will continue to comply in the absence of continued jurisdiction.

## IV.    MOTION FOR APPOINTMENT OF COUNSEL

In the First Amended Complaint, Plaintiff has requested the appointment of counsel to assist him with this litigation. (ECF No. 11 at 27(E).) Plaintiff does not have a constitutional right to appointed counsel in this action, Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), and the court cannot require an attorney to represent plaintiff pursuant to 28 U.S.C. § 1915(e)(1). Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298, 109 S.Ct. 1814, 1816 (1989). However, in certain exceptional circumstances the court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). Rand, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success

///

of the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved." Id. (internal quotation marks and citations omitted).

In the present case, the court does not find the required exceptional circumstances. At this early stage in the proceedings the court cannot make a determination that Plaintiff is likely to succeed on the merits. To date, the complaint has not been served and no other parties have yet appeared. Plaintiff's claims -- that he is being denied adequate outdoor exercise and other privileges, and was subject to discrimination -- are not complex. Moreover, based on a review of the record in this case the Court finds that Plaintiff can adequately articulate his claims. Therefore, Plaintiff's motion shall be denied without prejudice to renewal of the motion at a later stage of the proceedings.

## V.   PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution

or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.   Mitchell v. Cate and In re Haro

Plaintiff appears to be bringing claims based on ongoing and settled class actions relating to the treatment of prisoners in California prisons.  Figueroa v. Clark, 1:19-cv-000968-DAD-BAM-PC (E.D. Cal. Aug, 8, 2020), ECF No. 25 at 9-10 (citing see Mitchell v. Cate, case no. 2:08–CV–01196–TLL–EFB (E.D. Cal.); and Plata v. Schwarzenegger, case no. C–01–1351 TEH (N.D. Cal., filed Apr. 5, 2001) and also Coleman v. Brown, case no. 2:90–CV–520–KJM–DB (E.D. Cal) Hecker v. California Department of Corrections and Rehabilitation, case no. 2:05–CV–2441–KJM–DAD (E.D. Cal.)).  To address Plaintiff's claims, the Court judicially notices these cases and their dockets.  See Fed. R. Evid. 201(c)(1).

These class actions have resulted in various settlements, injunctions, and remedial plans based on litigation of the aforementioned class actions.  Id.  Plaintiff is alleging that policies enacted at Corcoran as they relate to inmates violate these court orders.  Id.  In particular, Plaintiff seeks to enforce the settlement agreement in Mitchell v. Cate.  Id.  On May 30, 2008, an action was filed to challenge allegedly race–based lockdowns and "certified a class consisting of all male prisoners who are now, or will in the future be, subjected to CDCR's

modified program and lockdown policy." Id. (citing Mitchell v. Cate, No. 2:08–CV–01196, 2014 WL 3689287 (E.D. Cal. July 21, 2014)).   Plaintiffs sought an injunction against implementing race-based lockdowns, and ensuring that class members are not deprived of outdoor exercise for excessive periods of time during lockdowns and modified programs, because these policies violated the Equal Protection Clause and constituted cruel and unusual punishment.   Mitchell v. Cate, No. 2:08–CV–01196–TLN–EFB, 2015 WL 5920755, at *3 (E.D. Cal. Oct. 7, 2015).   Id.   At settlement it was agreed that CDCR (1) would no longer implement any lockdowns or modified programs based on race, and (2) would implement a policy providing for outdoor exercise during long modified programs.   Id.   The case has been terminated based on the terms of the settlement. Id. (citing see Mitchell, No. 2:08–CV–01196–TLN–EFB (ECF No. 393)).

Plaintiff, as a male CDCR inmate who is subject to lock downs is a member of the Mitchell class.   Id. (citing Mitchell, No. 2:08–CV–01196 2014 U.S. Dist. LEXIS 100714 at *34, 2014 WL 3689287).   Plaintiff is alleging that inmates are restricted to their cells for excessively long periods of time during Modified Programs in violation of the Eighth Amendment.   This is duplicative of the issues raised in Mitchell regarding the need for exercise during lockdowns.   Id. (citing Mitchell, No. 2:08–CV–01196–TLN–EFB, 2015 WL 5920755, at*1, 2015 U.S. Dist. LEXIS 137893, at *10.)   Therefore, Plaintiff cannot seek relief here based on violations of injunctions, settlements, remedial plans, or other court orders provided in any of the class actions. Id. A claim for a violation of those orders requires enforcement in the court that issued the order. Id. (citing see Hook v State of Ariz, Dept. of Corrections, 972 F.2d 1012, 1014 (9th Cir. 1992)). Plaintiff cannot seek here any enforcement or modification of these court orders.   Id.

Plaintiff also appears to bring claims based on the court's decision in In Re Haro, Solano County Super. Ct. No. FCR282399, 2014 WL 1233117, 2014 Cal. App. Unpub. LEXIS 2146 (Court of Appeal, First District, Division 2, California) (Mar. 26, 2014). As with Mitchell, Plaintiff cannot seek relief here based on orders in Haro, because any claim for violation of those orders requires enforcement in the court that issued the order.   Haro also has no bearing on

Plaintiff's case because it is an unpublished opinion.  California Rules of Court, rule 8.1115, restricts citation of unpublished opinions in California courts.

### B.   Appeals Process

Plaintiff's allegations against some of the Defendants pertain to their review and handling of Plaintiff's inmate appeals.  The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause."  Sandin v. Conner, 515 U.S. 472, 483-84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id.

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).  "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."  Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment."  Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing a prisoner's administrative appeals generally cannot serve as the basis for liability in a section 1983 action.  Buckley, 997 F.2d at 495.  The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct.  "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."  Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005) accord George v. Smith, 507

F.3d 605, 609-10 (7th Cir. 2007); <u>Reed v. McBride</u>, 178 F.3d 849, 851-52 (7th Cir. 1999); <u>Vance v. Peters</u>, 97 F.3d 987, 992-93 (7th Cir. 1996).; <u>Haney v. Htay</u>, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. Feb. 21, 2017).  Consequently, the failure or refusal to process a grievance or the denial, rejection, or cancellation of a grievance does not violate any constitutionally protected right.  <u>See</u> <u>Rushdan v. Gear</u>, No. 1:16-cv-01017-BAM (PC), 2018 WL 2229259, at *6 (E.D. Cal. May 16, 2018); <u>Givens v. CDCR</u>, No. 2:19-cv-0017-KJN P, 2019 WL 1438068, at *4 (E.D. Cal. Apr. 1, 2019); <u>Wright v. Shannon</u>, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment). As a result, Plaintiff may not impose liability on a defendant simply because the defendant played a role in processing Plaintiff's inmate appeals or grievances. <u>See</u> <u>Buckley</u>, 997 F.2d at 495 (because an administrative appeal process is only a procedural right, no substantive right is conferred, no constitutional protections arise, and the "failure to process any of Buckley's grievances … is not actionable under section 1983.").

Thus, Plaintiff's allegations that some of the Defendants failed to properly process his appeals fail to state a cognizable claim.

### C.      <u>Conditions of Confinement – Eighth Amendment Claim</u>

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials therefore have a "duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."  <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted).  "Although the routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, 'those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.'"  <u>Id.</u>; <u>see also</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred."  <u>Id.</u>

"A prisoner claiming an Eighth Amendment violation must show (1) that the deprivation he suffered was 'objectively, sufficiently serious'; and (2) that prison officials were deliberately indifferent to his [health or] safety in allowing the deprivation to take place." Morgan, 465 F.3d at 1045. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if the official knows that the plaintiff faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825, 837-45, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

"[E]xercise has been determined to be one of the basic human necessities protected by the Eighth Amendment." Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005). More specifically, "long-term denial of *outdoor* exercise is unconstitutional." LeMaire v. Maass, 12 F.3d 1444, 1458 (9th Cir. 1993) (italics in original). However, the right to outdoor exercise is not absolute and "the constitutional adequacy of the exercise provided depends upon the individual facts of each case." Richardson v. Runnels, 594 F.3d 666, 672 (9th Cir. 2010) (internal quotation marks omitted).

"Despite grappling with the issue for decades, the Ninth Circuit has not identified a specific minimum amount of weekly exercise that must be afforded under the Eighth Amendment." Armenta v. Paramo, No. 3:16-cv-02931-BTM-KSC, 2018 WL 4612662, at *12 (S.D. Cal. Sept. 25, 2018) (citations and internal quotation marks omitted). Nevertheless, the Ninth Circuit has held that providing pretrial detainees in administrative segregation and other restrictive classifications with, at best, only 90 minutes of exercise outside of their cells "does not give meaningful protection to this basic human necessity." Pierce v. County of Orange, 526 F.3d 1190, 1212 (9th Cir. 2008).

Hence, Plaintiff's allegation that he was only provided with approximately two hours of out-of-cell exercise per week while he was on a modified lockdown for months sufficiently pleads that Plaintiff has suffered an "objectively, sufficiently serious" deprivation of outdoor exercise. Morgan, 465 F.3d at 1045. Plaintiff alleges that after the September 28, 2018 incident, defendants Clark, Gallager, and Baughman placed all Facility C inmates on a Modified Program, and on October 10, 2018, defendants Clark, Gallager, and Baughman made an administrative

decision to resume a Normal Program for all uninvolved inmates, while Plaintiff and all similarly situated racially classified STG Surenos and STG Bulldogs continued to be subjected to the Modified Program.

Therefore, the court finds that Plaintiff states a cognizable claim for adverse conditions of confinement against Defendants Clark, Gallager, and Baughman, in violation of the Eighth Amendment based on lack of a constitutionally acceptable amount of out-of-cell exercise.

### 2.   **Loss of Privileges**

Plaintiff's loss of privileges other than outdoor exercise is not "sufficiently grave to form the basis of an Eighth Amendment violation[:]" Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); see Rhodes v. Chapman, 452 U.S. 337, 348, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (deprivation of rehabilitation and educational programs does not violate the Eighth Amendment); Gerber v. Hickman, 291 F.3d 617, 621 (9th Cir. 2002) ("[I]t is well-settled that prisoners have no constitutional right while incarcerated to contact visits."); Fabricant v. Miranda, No. EDCV 19-0144 ODW, 2019 WL 2902506, at *6 C.D. Cal. Apr. 24, 2019 ("Depriving inmates of law library access does not violate the Eighth Amendment[.]"); Hall v. Frauenheim, No. 1:16-cv-00263-AWI-DLB PC, 2016 WL 2898712, at *5 (E.D. Cal. May 18, 2016) (stating that it was unlikely that missing religious services was sufficiently serious enough to rise to the level of an Eighth Amendment violation); Haynes v. Sisto, No. CIV S-08-2177-SPG (PC), 2010 WL 2076970, at *2 (E.D. Cal. May 21, 2010) (holding that "depriving a prisoner of phone calls and visits for four and a half months . . . does not violate the Eighth Amendment"); May v. Baldwin, 895 F. Supp. 1398, 1407-08 (D. Or. 1995) (no Eighth Amendment claim for an inmate in administrative segregation denied canteen privileges for a short time when denial did not deprive him of treatment for serious medical condition or access to personal-hygiene products). Therefore, Plaintiff fails to state an Eighth Amendment violation for denial of privileges.

### D.   **Equal Protection**

The Equal Protection Clause requires the State to treat all similarly situated people equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87

L.Ed.2d 313 (1985). This does not mean, however, that all prisoners must receive identical treatment and resources. See Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972); Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993); Allen v. Toombs, 827 F.2d 563, 568–69 (9th Cir. 1987).

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that '"the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class,"'" (citing see Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Here, Plaintiff alleges that his right to equal protection was, and is continuing to be, violated when Corcoran prison officials imposed a continuing race-based (Hispanic) lockdown and/or modified program on Plaintiff and all inmates belonging to the STG Surenos after inmates affiliated with the STG Bulldogs and armed with inmate manufactured weapons attacked inmates affiliated with the STG Surenos on September 28, 2018. Plaintiff asserts that the lockdown and/or modified program restrictions are not narrowly tailored to further the compelling governmental interest of inmate safety, security, and discipline and that the modified program restrictions have been imposed as a form of punishment due to the ongoing conflict between inmates affiliated with the Surenos and Bulldogs.

Invidious racial discrimination such as racial segregation, which is unconstitutional outside prisons, is also unconstitutional within prisons. See Johnson, 543 U.S. at 505-06. While race-based classifications in prisons are not per se unconstitutional, such classifications are immediately suspect and subject to strict scrutiny. See id. at 508–10. Prison officials must therefore demonstrate that the race-based policy or action is narrowly tailored to serve a compelling state interest such as prison security See id. at 510–13, 515 (remanding case for determination of whether CDC's policy of temporarily segregating inmates by race when they

arrive in the prison system initially or are transferred to a new prison is narrowly tailored to serve a compelling state interest).  In an equal protection claim based on racial discrimination, "the defendants ha[ve] to show that reasonable men and women could not differ regarding the necessity of a racial classification in response to prison disturbances and that the racial classification was the least restrictive alternative (i.e., that any race-based policies are narrowly tailored to legitimate prison goals).  Prison officials must therefore demonstrate that the race-based policy or action is narrowly tailored to serve a compelling state interest. Id. at 510-11; Richardson, 594 F.3d at 671.

Plaintiff claims he was discriminated against based on his race and ethnicity because he was classified by prison officials as a member of STG Surenos, of which the majority of members are of Mexican or Latin American decent, and when some members of the STG Surenos participated in an attack, all of the STG Surenos members, including Plaintiff, were placed on a Modified Program which unfairly cost Plaintiff a loss of privileges even though he had not participated in the attack.  Here, Plaintiff has alleged facts demonstrating that he was discriminated against because of his race or ethnicity because he was forced to follow a Modified Program due to his classification as a STG Sureno, which is composed of more than 99 percent Hispanic inmates, even though he was not involved in the September 28, 2018 incident.

However, Plaintiff has not alleged facts showing that any individual defendant personally participated in the deprivation of his rights.  Jones, 297 F.3d at 934.  Allegations against a group of defendants such as the "prison officials at CSP-Corcoran" or "Defendants" do not allege a cognizable claim.  In his First Amended Complaint, Plaintiff does not allege facts showing how a particular defendant, named individually, was personally involved.  He merely substitutes a list of named defendants in lieu of "defendants" without factual support showing how an individually named defendant was involved in the decision, or alleged constitutional violation. Plaintiff merely alleges that if a defendant signed off on a Program Status Report, he or she is liable.  These conclusory allegations are insufficient.  Plaintiff fails  allege a factual support as to any of the named individual defendants.

Moreover, Plaintiff's claim that Defendants were preferential to Black inmates classified as STG Blood and STG Crips, compared to how STG Surenos would have been treated in similar circumstances, is not viable.  First, Plaintiff alleges that Defendants treated them differently because Defendants are "prejudiced and biased," which is speculation and conclusory. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  Second, Plaintiff cannot show, other than by speculation,  that the other STG groups would not be treated alike if similarly situated.  In this instance, Plaintiff has not used facts to support his allegations.

Therefore, the court finds that Plaintiff fails to state a claim for violation of equal protection in the First Amended Complaint.

### E.   **Failure to Protect**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Morgan, 465 F.3d at 1045.  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Farmer, 511 U.S. at 832-33 (internal citations and quotations omitted).  Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  Id. at 833; Hearns, 413 F.3d at 1040.  The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff.  E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety."  Farmer, 511 U.S. at 834.  The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his future health.  Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)).  The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result."  Farmer, 511 U.S. at 835. The Court defined this "deliberate indifference"

standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

Plaintiff alleges that defendants Baughman, Clark, Goss, Hence, Gallager, Perez, Navarro, Brown, Llamas, and Gamboa approved and conducted sixteen gladiator style fights, and building tower control officers, including defendants Hernandez and Rocha, intentionally opened inmates' cell doors to cause fights, and falsified reports by stating that the opening of the doors were "accidental openings." Plaintiff state that he and other STG Surenos were walking to dinner when Officer A. Rocha opened a cell housing two STG Bulldogs and a fight erupted.

Plaintiff lacks standing to bring a failure-to-protect claim because he alleges that he was never involved in the fights and was never released from his cell to cause a gladiator fight. Plaintiff only claims that he was injured when he slipped on O.C. pepper spray. Under these facts Plaintiff fails to state a claim against the defendants, including defendant Rocha, for failure to protect him. Plaintiff has not alleged facts explaining how or when he slipped on the pepper spray, or how his injuries are related to the gladiator fights. Plaintiff's allegations are vague and insufficient to establish a nexus between the failure to protect him from the gladiator fights and his slip-and-fall injury. Moreover, Plaintiff has not shown that any named defendant knew Plaintiff was at substantial risk of serious harm yet ignored the risk or acted unreasonably, causing Plaintiff to slip and fall.

Therefore, Plaintiff fails to state a claim for failure to protect him.

**F.     Retaliation**

"Prisoners have a First Amendment right to file grievances [and lawsuits] against prison officials and to be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

Plaintiff alleges that he filed a staff complaint against defendant A. Rocha, and the following week officers fabricated an RVR Report against Plaintiff and charged him with battery. Plaintiff believes that his filing of the staff complaint is the reason officers fabricated the RVR. However, Plaintiff has not demonstrated a causal nexus between the alleged retaliation and any constitutionally protected activity, showing that the retaliatory act was done *because* of the protected activity.  Accordingly, Plaintiff fails to state a cognizable retaliation claim.

### G.    State Law Claims

Plaintiff claims that Defendants' actions caused him to suffer from intentional infliction of emotional distress.  This is a state law claim.  Violation of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983.  Section 1983 does not provide a cause of action for violations of state law.  See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007).  To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002).

Plaintiff is also advised that the Government Claims Act requires exhaustion of state law claims with [the Department of General Services, formerly known as] California's Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege

compliance in his complaint. <u>Shirk v. Vista Unified Sch. Dist.</u>, 42 Cal.4th 201, 208-09 (Cal. 2007); <u>State v. Superior Court of Kings Cnty. (Bodde)</u>, 32 Cal.4th 1234, 1239 (Cal. 2004); <u>Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs.</u>, 237 F.3d 1101, 1111 (9th Cir. 2001); <u>Mangold v. California Pub. Utils. Comm'n</u>, 67 F.3d 1470, 1477 (9th Cir. 1995); ); <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff has not done so. Therefore, Plaintiff's state law claim fails.

## H.   **Relief Requested**

Besides monetary damages, Plaintiff requests declaratory relief, attorney's fees, and costs of suit. Plaintiff also requests the court to retain jurisdiction over this lawsuit until Defendants and/or CDCR have complied with the court's orders and/or terms of a settlement agreement and there is reasonable assurance that Defendants and/or the CDCR will continue to comply in the absence of continued jurisdiction.

Plaintiff's request for declaratory relief should be denied because it is subsumed by Plaintiff's damages claim. <u>See</u> <u>Rhodes v. Robinson</u>, 408 F.3d 559, 565-66 n.8 (9th Cir. 2005) (because claim for damages entails determination of whether officer's alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); <u>see also</u> <u>Fitzpatrick v. Gates</u>, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]"

With respect to Plaintiff's request for attorney fees, "[i]n any action or proceeding to enforce a provision of section[] 1983. . . , the court, in its discretion, may allow the prevailing party. . . reasonable attorney's fees. . . ." 42 U.S.C. § 1988(b). Plaintiff's contention that he is entitled to attorney's fees if he prevails is without merit. Plaintiff is representing himself in this action. Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails. <u>See</u> <u>Friedman v. Arizona</u>, 912 F.2d 328, 333 n.2 (9th Cir. 1990), superseded by statute as stated in <u>Warsoldier v. Woodford</u>, 418 F.3d 989 (9th Cir. 2005); <u>Gonzalez v. Kangas</u>, 814 F.2d 1411, 1412 (9th Cir. 1987); <u>see also</u> <u>Rickley v. Cnty. of Los Angeles</u>, 654 F.3d

950, 954 (9th Cir. 2011) ("The Court accordingly adopted a per se rule, categorically precluding an award of attorney's fees under § 1988 to a pro se attorney-plaintiff.")

**VI.    CONCLUSION AND RECOMMENDATIONS**

For the reasons set forth above, the court finds that Plaintiff states cognizable claims against defendants Ken Clark (Warden), Captain J. Gallager, and D. Baughman (CDCR Acting Associate Director), for adverse conditions of confinement in violation of the Eighth Amendment; for denying Plaintiff sufficient access to out-of-cell exercise, but no other claims against any of the Defendants.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." The Court does not recommend granting further leave to amend. The Court already provided Plaintiff with an opportunity to amend his complaint with the benefit of relevant legal standards, and Plaintiff filed his First Amended Complaint with the guidance of those legal standards. Plaintiff has not been able to cure the remaining deficiencies, and it appears that further leave to amend would be futile. Therefore, further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.    That Plaintiff's motion for appointment of counsel be denied;

2.    That Plaintiff proceed in this case with his cognizable claims against defendants Ken Clark (Warden), Captain J. Gallager, and D. Baughman (CDCR Acting Associate Director), for adverse conditions of confinement in violation of the Eighth Amendment relating to the alleged lack of out-of-cell exercise;

3.    That all other claims and defendants be dismissed from this case based on Plaintiff's failure to state a claim;

4.    Plaintiff's claims concerning alleged violations of injunctions, settlements, remedial plans, or other court orders in Mitchell v. Cate or In re Haro; the prison appeals process; state law claims; loss of privileges; failure to protect; equal protection; retaliation; and, claims for declaratory relief be dismissed based on Plaintiff's failure to state a claim;

5.      Defendants D. Goss (Associate Warden), L.C. Hence (Chief Deputy Warden), M. Gamboa (Chief Deputy Warden), Sergeant P. Perez, Sergeant J. Navarro, Lieutenant C. Brown, Captain Llamas, and Does #1-10 be dismissed from this case for Plaintiff's failure to state any claims against them; and

6.      This case be referred back to the Magistrate Judge for further proceedings, including initiation of service of process.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after the date of service of these findings and recommendations, Plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 18, 2021**                          **/s/ Gary S. Austin**
                                                                UNITED STATES MAGISTRATE JUDGE