UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ROBERTO ZAIZA, | **1:19-cv-01476-DAD-GSA-PC** |
| Plaintiffs, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED IN PART, AND DENIED IN PART** |
| vs. | **(ECF No. 21.)** |
| CLARK, et al., | |
| Defendants. | **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

I.      **PROCEDURAL BACKGROUND**

Jose Roberto Zaiza ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on October 17, 2019.  (ECF No. 1.)  On September 28, 2020, the court dismissed the Complaint for failure to state a claim, with leave to amend.  (ECF No. 10.)  On October 21, 2020, Plaintiff filed the First Amended Complaint.  (ECF No. 11.)

This case now proceeds with the First Amended Complaint against Defendants Ken Clark (Warden), Captain J. Gallagher,[1] and D. Baughman (CDCR Acting Associate Director)

---

[1] Sued as Gallager.

1

(collectively, "Defendants") for insufficient access to out-of-cell exercise in violation of the Eighth Amendment.[2]  (ECF No. 11.)

On September 10, 2021, Defendants filed a motion to dismiss the complaint.  (ECF No. 21.)  On October 27, 2021, Plaintiff filed an opposition to the motion.  (ECF No. 24.)  On November 1, 2021, Defendants filed a reply to the opposition.  (ECF No. 25.)  Defendants' motion has been submitted upon the record without oral argument pursuant to Local Rule 230(*l*), and for the reasons that follow the court finds that Defendants' motion to dismiss should be granted in part and denied in part.

## II.   SUMMARY OF FIRST AMENDED COMPLAINT

### A.   Allegations

The events at issue in the First Amended Complaint allegedly took place at Corcoran State Prison in Corcoran, California.  Plaintiff's allegations follow:

In or about June 2008, Plaintiff was sentenced to 75 years to life to be served within the CDCR.  In or about July 2008, while confined at North Kern State Prison, CDCR classified Plaintiff as  a member of a "Southern Hispanic" disruptive group.  The CDCR has previously admitted this classification is a race-based classification in R. Mitchell v. Cate, et al., Case No. 2:08-cv-01196-TLN-EFB, 10/14/2015, Doc. No. 332-1 (E.D. Cal.).

On January 18, 2013, in the case In Re Haro, FCR282399,[3] the Solano Superior Court held that CDCR's lockdown and/or modified program policy could not survive a strict-scrutiny analysis as required by the United States Supreme Court's decision in Johnson v. California, 543 U.S. 499, 125 S.Ct. 1141 (2005), ordering that CDCR's classification system must, at minimum: (1) preclude an inmate's inclusion in a specific classification based on ethnic or geographical background alone; and, (2) preclude arbitrary classifications that unduly focus on certain ethnicities while wholly ignoring others.  (ECF No. 11 at 10:14-17.)  As a result of the ruling

---

[2] On April 20, 2021, the court issued an order dismissing all other claims and defendants from this case, for Plaintiff's failure to state a claim.  (ECF No. 15.)

[3] In Re Haro, Solano County Super. Ct. No. FCR282399, 2014 WL 1233117, 2014 Cal. App. Unpub. LEXIS 2146 (Court of Appeal, First District, Division 2, California) (Mar. 26, 2014).

Plaintiff's classification changed from "Southern Hispanic" to Security Threat Group (STG) Surenos. Plaintiff alleges that CDCR continues to use race and ethnicity to classify Plaintiff and other inmates contrary to the Haro court's order. For example, Black inmates who were previously classified as "Black-Crips" and "Black-Bloods" are now classified as "STG Bloods" and "STG Crips." Plaintiff alleges that CDCR Defendants continue to utilize race and ethnicity to racially classify Plaintiff and all inmates into "STGs," contrary to the Haro court's order.

On September 28, 2018, during morning tray pickup in Building 3C02, approximately five STG Bulldogs attacked ten STG Surenos with inmate-manufactured weapons. Due to the STG Bulldogs' unprovoked attack on the STG Surenos, staff was required to use a 40 MM launcher MK-90 OC pepper spray, and OC instantaneous blast grenades to quell the incident. Plaintiff was housed in Building 3C03 and was not involved in the incident.

In spite of the incident, defendants Clark, Gallagher, and Baughman refused to impose a "State of Emergency" and instead placed all Facility C inmates on a Modified Program in order to facilitate inmate interviews, searches, and intelligence gathering, and then attempted to return all inmates other than STG Bulldogs and STG Surenos back to a Normal Program.

On October 10, 2018, an administrative decision was made by defendants Clark, Gallagher, and Baughman to resume a Normal Program for all uninvolved inmates (STG Bloods/Crips, STG Nazis/Skinheads, STG Asian Gangs), while Plaintiff and all similarly situated racially classified STG Surenos and Bulldogs were subjected to Defendants' Modified Program.

Plaintiff alleges that all of the Defendants who signed/dated PSRs[4] from September 28, 2018 to date – D. Baughman, Ken Clark (Warden), D. Goss (Associate Warden), L.C. Hence (Chief Deputy Warden), M. Gamboa (Chief Deputy Warden), Sergeant P. Perez, Sergeant J. Navarro, Lieutenant C. Brown, Captain Llamas, and Captain J. Gallagher -- approved restrictions by the race-based Modified Program for work/education, attending self-help programs, (e.g., NA, AA, higher education classes, GOGI Lifers Group, mandated substance abuse program (SAP), which are mandated by Board of Prison Terms for parole considerations), restriction of canteen,

---

[4] Program Status Reports.

3

dayroom telephone calls, visits, family visits, packages, and restricted visits, even behind glass, religious services, and other restrictions.  Defendants informed Plaintiff and race-based Modified Program inmates to hold their own in-cell religious services.  Defendants suspended physical access to the law library except for inmates who can produce court ordered verified court filing deadlines.

Defendants only allowed Plaintiff one shower every third day in boxers and shower shoes only.  Plaintiff was cell-fed prior to the race-based Modified Program and Defendants only permitted Plaintiff to receive health care services for medical/dental services.  Defendants only permitted Plaintiff and race-based Modified Program inmates access to health care services because of court orders from Plata v. Brown/Newsom, Coleman v. Brown/Newsom, and Perez v. Brown/Newsom.

Defendants' Modified Program mandates that inmates be strip searched and wanded with a metal detector prior to being escorted in restraints to medical/dental visits and the law library. Plaintiff alleges that not once did any correctional officer conduct an unclothed body search or wand Plaintiff with a hand-held metal detector prior to going to any of the above appointments. The only time Plaintiff was subjected to a metal detector search was after exiting his cell prior to going to staggered intervals for out-of-cell exercise.

Under the program Plaintiff was deprived of out-of-cell exercise and sunshine from September 28, 2018 through July 8, 2019, and from August 24, 2019 through the present date. Approximately fifteen days after the incident, Defendants D. Baughman, Ken Clark (Warden), D. Goss (Associate Warden), L.C. Hence (Chief Deputy Warden), M. Gamboa (Chief Deputy Warden), Sergeant P. Perez, Sergeant J. Navarro, Lieutenant C. Brown, Captain Llamas, Captain J. Gallagher, and Does #1-10 started to provide Plaintiff (and some other Surenos) with sporadic opportunities for out-of-cell exercise, as follows:

October 2018

11th    1 hr. 45 min.

18th    1 hr. 30 min.

25th    1 hr. 30 min.

November 2018

        1st     1 hr. 30 min.

        21st   2 hr. 0 min.

        29th   1 hr. 0 min.

December 2018

        7th     2 hr. 30 min.

        27th   2 hr. 0 min.

January 2019

        15th   3 hr. 0 min.

        29th   2 hr. 0 min.

February 2019

        8th     2 hr. 0 min.

        27th   0 hr. 35 min.

March 2019

        8th     0 hr. 50 min.

        18th   2 hr. 15 min.

On or about March 25, 2019, defendant Gallagher informed STG Surenos MAC[5] Representative that they had received information from STG Surenos housed in different prisons that Facility C planned to stage a peaceful protest against the race-based Modified Program and its restrictions by refusing to lock it up after a yard recall until prison officials spoke with the MAC Representative.  This was false information and was not a plan that Plaintiff or the Facility C Surenos intended to implement.  Because of this false information, which defendant Warden K. Clark found credible, defendants Clark, Gallagher, and Baughman imposed additional restrictions on yard time for Surenos as follows:

April 2019

        2nd   2 hr. 10 min.

---

[5] Men's Advisory Council.

May 2019

     13th    2 hr. 30 min.

On or about January 6, 2019, the above Defendants eased a third restriction by allowing Modified Program inmates to purchase only hygiene items from canteen, but no food items or stationery.  Again, disciplinary inmates in Corcoran's Ad-Seg/ASU, SHU, and PHU are permitted to purchase and receive all the above including packages as mandated by CDCR regulations.

On or about November 27, 2018, defendants Baughman, Clark, Goss, Hence, Gallagher, and Gamboa started releases of STG Bulldogs and STG Surenos based on "low risk" assessments of these inmates in an effort to return the inmates back to Normal Program.  However, these incremental releases between November 27, 2018 and June 6, 2019, were actually orchestrated and set-up gladiator-style fights/assaults.

Between September 28, 2018 through October 10, 2018, Defendants had "intelligence gatherings" from their confidential sources or snitches, and concluded that the STG Surenos were the victims in the September 28, 2018 incident and STG Bulldogs were the obvious aggressors, the issues and problems between Surenos and Bulldogs will not be resolved, and the violence between the two groups will continue.

Defendants Baughman, Clark, Goss, Hence, Gallagher, Perez, Navarro, Brown, Llamas, and Gamboa approved and conducted sixteen gladiator style fights.  From July 20, 2019 to August 27, 2019, highly trained professional building tower control officers would intentionally open Modified Program STG Bulldog inmates' cell doors while Normal Program STG Surenos inmates were released for breakfast, dinner, or yard, resulting in more gladiator style fights.  Officers C/O Hernandez, A. Rocha, and another control booth officer conducted gladiator fights, falsified reports, and fabricated documents by stating that the doors were "accidental openings."

On August 19, 2019, Plaintiff was housed in Building 3 when Officer A. Rocha was in the control booth tower and opened a cell housing two STG Bulldogs when Plaintiff and other STG Surenos were walking to dinner.  Officers Rocha, Sarmiento, and Cruz reported that STG Surenos were walking towards the door that leads outside when C/O Rocha accidentally opened

6

the STG Bulldogs' cell door.  STG Bulldogs attacked STG Surenos.  Due to false reports, STG Surenos were charged with battery.  At no time did Plaintiff come into contact with the STG Bulldogs.  OC pepper spray was used.  Plaintiff still receives medical treatment for injuries to his right knee and had surgery and therapy.

Plaintiff filed appeals complaining about the Modified Program.  Defendants Navarro and Brown were interviewers, and defendants Goss and Hence signed off on appeals.  At Plaintiff's second level of appeals, filed on February 22, 2019, Plaintiff was interviewed by Defendant Lt. C. Brown.

Due to lack of opportunity to exercise outdoors Plaintiff suffered from migraine headaches, pains in his head, neck, and shoulder, muscle atrophy, lethargy, and sensitive eyes. Plaintiff had two surgeries and received physical therapy.

Contrary to CDCR and Defendants Clark, Goss, Hence, Gamboa, Perez, Navarro, Brown, Llamas, and Gallagher being ordered by the <u>Haro</u> court to inter alia "preclude an inmates race/ethnicity in a specific classification" (e.g., Southern Hispanic) and the <u>Mitchell</u> settlement agreement mandating "CDCR will not implement race-based Modified Program of lockdowns, lockdowns or Modified Program may be (1) imposed on all inmates and lifted from all inmates in the affected area or (2) imposed and lifted from inmates in the affected area based on individualized threat assessment, but (3) may not be imposed or lifted based on race or ethnicity" (<u>Mitchell v. Cate</u>, Doc. No. 322-1 settlement agreement, p. 5 of 22).  The CDCR also agreed to "revise its policies concerning modified programs and lockdowns . . ."  (<u>Id.</u>, p. 22:20).  In addition, the <u>Mitchell</u> settlement agreement makes no allowance for race-based Modified Programs or lockdown even when there are emergency situations arising from race-based violence.  (<u>Id.</u>, pp. 15-24.)

Plaintiff alleges that during the first race-based Modified Program between September 28, 2018 and July 6, 2019, defendants Clark, Goss, Hence, Gamboa, Perez, Navarro, Brown Llamas, and Gallagher intentionally refused to adhere to the <u>Mitchell</u> settlement agreement terms and conditions.  The CDCR and Defendants only adhered to the <u>Haro</u> court's orders by making changes from "Southern Hispanic" to STG Surenos, with similar name changes for the "Northern

Hispanics," "Black Crips, and "Black Bloods," who are now classified as STG Nortenos, STG Bloods, and STG Crips. Contrary to the <u>Haro</u> court's order, CDCR continues to utilize race and ethnicity in classifying CDCR inmates. Plaintiff alleges that more than 99% of STG Surenos are Mexican, Mexican-descent Chicanos, or from Latin American countries.

Contrary to <u>Mitchell</u>'s settlement agreement, Plaintiff should not have been subjected to the Modified Program based on race because he was not involved in the September 28, 2018 incident. Contrary to the <u>Haro</u> court's order and the <u>Mitchell</u> settlement agreement to revise policies using race as a factor for classifying its prisoners, all that the CDCR and Defendants did was drop the "Hispanic" from "Southern Hispanic," "Northern Hispanic," and "Bulldog Hispanic" and add "STG Sureno, STG Norteno, and STG Bulldog, and the same for Black-Bloods/Crips, which are now STG Bloods and STG Crips. CDCR defendants presume a "racial obligation" to one of the 4 prison gangs enforcing policies that Plaintiff, as a STG Sureno, is automatically subservient to the EME/Mexican Mafia, that STG Nortenos are subservient to the Nuestra Familia, STG Bloods/Crips to the Black Guerrilla Family, and STG Nazi/Skinheads and other white hate groups to the Aryan Brotherhood.

Plaintiff alleges Defendants' race-based Modified Program policies go overboard because they unnecessarily subject Plaintiff to restrictions/deprivations based solely on his classification as a STG Sureno, and the Modified Program was not narrowly tailored to the facts that Plaintiff lost more freedoms and privileges as a Modified Program inmate compared to the STG Bulldogs and STG Surenos in the incident of September 28, 2018, and all the orchestrated gladiator-style fights. This is all contrary to Plaintiff identifying the informing Defendants of available, workable, race-neutral alternatives to the restrictions/deprivations in his administrative appeals. Plaintiff alleges that Defendants refused to make any good-faith efforts to ease any restrictions until about six to seven months into the first race-based Modified Program in March or April 2019.

Plaintiff further alleges that during the first race-based Modified Program between September 28, 2018 and July 6, 2019, Defendants K. Clark, D. Goss, L.C. Hence, M. Gamboa, P. Perez, J. Navarro, C. Brown, P. Llamas, and J. Gallagher preferentially treated Black inmates

classified as STG Blood and STG Crips differently from Plaintiff and all other STG Surenos, because Defendants are prejudiced and biased.  About December 2018, STG Bloods and STG Crips were involved in a riot with each other that involved approximately 30 to 40 STG Bloods and STG Crips.  A code 3 was broadcast over the prison communications wherein staff from other facilities respond to the riot in riot gear and weapons in an attempt to quell the riot and/or assist in maintaining security if the riot was quelled prior to their arrival.  In this incident Facility "C" S&E and responding staff quelled this riot using the force of 40MM Launches MK9 O.C. spray, and O.C. instantaneous blast grenades, and secured inmates in flex-cuffs.  Defendants named above all refused and failed to subject STG Bloods and Crips to a Modified Program in order to facilitate interviews, searches, and intelligence gathering, and instead returned all STG Bloods and STG Crips back to Normal Programming later that evening.

Plaintiff brought this equal protection violation to the attention of defendant Sgt. J. Navarro on January 24, 2019 during FLR[6] Interview.  Plaintiff addressed this incident and the return to normal programming.  Defendant Navarro responded stating it was an "isolated incident."

Then on January 23, 2019, during a cell-swap in Building 3, six STG Bulldogs attacked two STG Crips with weapons and staff was required to use force to quell this incident. Defendants refused to place the STG Crips on a Modified Program, even though the situation was identical to that of the STG Surenos on September 28, 2018.  Instead, Defendants returned STG Crips to a Normal Program later that day and "sterilized" the documentation of this incident in PSR Cor-03C-18-006 (attached with 602).  (ECF No. 11 at 22:14.)

On March 3, 2019, when Plaintiff addressed the above equal protection information, Defendant Perez stated, "Oh, well, it is what it is."  When Plaintiff received the FLR 602 appeal back, the PSR was attached to the appeal.  Plaintiff alleges that Defendant P. Perez acted "frivolous or malicious" due to the fact that the PSR has nothing to do with Plaintiff's appeal.

///

---

[6] First Level Review.

Then, on or about March 18, 2019, STG Bloods assaulted staff, and Defendants subjected all STG Bloods to a Modified Program for only one week!, and then they were returned to Normal Programming.  Plaintiff alleges that had it been STG Surenos who assaulted staff all STG Surenos would have been subjected to a Modified Program for at least eight months in order to facilitate interviews, searches, and intelligence gatherings, and C/Os would have destroyed Surenos' cells and property as is the custom by C/Os for staff assaults.

Plaintiff alleges that he was purposely discriminated against and Defendants' treatment of Plaintiff, compared to the treatment of similarly racially classified STG Black inmates, was not reasonably related to legitimate penological interests or goals.

On the day of the gladiator fight orchestrated by A. Rocha on August 19, 2018 in which Plaintiff suffered injuries, C/O Hamelton assisted Plaintiff off the floor due to knee damage. Plaintiff is an ADA patient and slipped in OC pepper spray.  Defendant Perez, who was in charge, and C/O Hamelton stated, "Hey, Legal Beagle,[7] that's a freebee," meaning that Plaintiff would not be issued a serious RVR report.  The following day Plaintiff filed a staff complaint against A. Rocha.  Plaintiff believes that his filing of the staff complaint is the reason officers fabricated an RVR Report and charged Plaintiff with battery the following week.

Plaintiff alleges that defendant Perez violated Title 15 Rules and Regulations during the interview for the staff complaint because he is not supposed to interview if he was the reporting officer.  Perez stated, "You're right," and the interview had to start over with a new officer. Plaintiff alleges that defendant Perez had malicious intent to either cover up the staff complaint or trash it.  Plaintiff requested the medical report but has not received it.

Plaintiff claims that he suffered from emotional distress, loss of sleep, harm, and injuries suffered due to deprivation of out-of-cell exercise.  Plaintiff further alleges that Defendants and this court are familiar with Corcoran State Prison's history and habit, routine, and practice of setting up gladiator style fights in its SHU Group Yard during 1992-1995, which resulted in

---

[7] Plaintiff states that he was given the aka moniker "Legal Beagle" by defendants Perez and Gallagher after Plaintiff received a settlement in one of his cases in November 2018.  (ECF No. 11 at 23 f.n.3.)

settlements, the firing of prison officials, and/or early "retirements," which was named the Green Wall.

As relief, Plaintiff requests declaratory relief, compensatory and/or punitive damages, attorney's fees, appointment of counsel, and costs of suit. Plaintiff also requests the court to retain jurisdiction over this lawsuit until Defendants and/or CDCR have complied with the court's orders and/or terms of a settlement agreement and there is reasonable assurance that Defendants and/or the CDCR will continue to comply in the absence of continued jurisdiction.

On April 20, 2021, the court issued an order for this case to proceed only against Defendants Ken Clark (Warden), Captain J. Gallagher, and D. Baughman (CDCR Acting Associate Director), for insufficient access to out-of-cell exercise in violation of the Eighth Amendment. (ECF No. 15.)

## B.   **Plaintiff's Claims**

On February 18, 2021, findings and recommendations were issued by the undersigned, recommending that this case proceed with Plaintiff's cognizable claims against Defendants Clark, Gallagher, and Baughman for failing to provide Plaintiff with sufficient access to out-of-cell exercise in violation of the Eighth Amendment. (ECF No. 13.) The undersigned found that Plaintiff's allegation that he was only provided with approximately two hours of out-of-cell exercise per week while he was on a modified lockdown for months sufficiently plead that Plaintiff has suffered an "objectively, sufficiently serious" deprivation of outdoor exercise, Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); (Id. at 17:23-26), as such Plaintiff stated a cognizable claim for adverse conditions of confinement in violation of the Eighth Amendment against Defendants based on the lack of a constitutionally acceptable amount of out-of-cell exercise. (Id. at 18:4-6.)

## III.   **RULE 12(b)(6) MOTION TO DISMISS**

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); see

also <u>Hosp. Bldg. Co. v. Rex Hosp. Trustees</u>, 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); <u>Barnett v. Centoni</u>, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. <u>See</u> <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009). In addition, *pro se* pleadings are held to a less stringent standard than those drafted by lawyers. <u>See</u> <u>Haines v. Kerner, 404 U.S. 519,</u> 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atl. Corp v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." <u>Id.</u> at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556). "Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).

///

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see id.; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

IMPORTANTLY, a Failure to exhaust assertion should usually be raised in a summary judgment motion, but "in those rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim."  Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc).

## IV.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A.   Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 993 (2002).

///

"[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ] — rules that are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218 (quoting Woodford v. Ngo, 548 U.S. 81, 88, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006)). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'"). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino, 747 F.3d at 1172-73. When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as "effectively unavailable." Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available); Marella, 568 F.3d 1024 (excusing an inmate's failure to exhaust because he did not have access to the necessary grievance forms to timely file his grievance).

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002); see also Cal. Code Regs. tit. 15, § 3084.1(b) (explaining that a cancellation or rejection of an inmate's appeal "does not exhaust administrative remedies").

**B.** **California Department of Corrections and Rehabilitation (CDCR) Administrative Grievance System**

The court takes judicial notice of the fact that the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or

omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The process is initiated by submitting a CDCR Form 602. Id. at § 3084.2(a).

California prisoners are required to submit appeals within thirty calendar days of the event being appealed, and the process is initiated by submission of the appeal at the first level. Id. at § 3084.7(a), 3084.8(c) Three levels of appeal are involved, including the first level, second level, and third level. Id. at § 3084.7. The third level of review exhausts administrative remedies. Id. at § 3084.7(d)(3). A final decision at the third level[8] of review satisfies the exhaustion requirement under 42 U.S.C. § 1997e(a). Lira v. Herrera, 427 F.3d 1164, 1166 (9th Cir. 2005). In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford, 548 U.S. at 85 (2006); McKinney, 311 F.3d. at 1199-1201.

### C.    Motion to Dismiss for Failure to Exhaust

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). On April 3, 2014, the Ninth Circuit issued a decision overruling Wyatt with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a). Albino, 747 F.3d at 1168–69. Following the decision in Albino, defendants may raise exhaustion deficiencies as an affirmative defense under § 1997e(a) in either: (1) a motion to dismiss pursuant to Rule 12(b)(6)[9]; or, (2) a motion for summary judgment under Rule 56. Id. If the court concludes that Plaintiff has failed to exhaust the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(e). Jones, 549 U.S. at 223–24; Lira, 427 F.3d at 1175–76.

///

---

[8] The third level is sometimes known as the Director's level.

[9] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint." Albino, 747 F.3d at 1162.

## V.      DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST

### A.      Defendants' Position

Defendants K. Clark, J. Gallagher, and D. Baughman move the court to dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that on the face of the First Amended Complaint it appears that Plaintiff failed to administratively exhaust his remedies for his claims against Defendants as required by the Prison Litigation Reform Act. Defendants address Plaintiff's two grievances attached to the First Amended Complaint, log numbers COR-18-06992 and COR-19-01246.

#### 1.      The First Grievance: COR-18-06922

On December 10, 2018, Plaintiff submitted grievance COR-18-06992, which was a group grievance that included Plaintiff's cellmate, Joel Olvera.  (First Amended Complaint, ECF No. 11 at 15, 45-49.)  In relevant part, Plaintiff described the issue as follows:

> …this appeal is conserning [*sic*] the program were [*sic*] being subjected to as of September 28, 2018 we were placed on lockdown modification. As of then we've been given yard "once" a week[.] [A]t times in the morning yard was only for maybe two hours and every now in [sic] then[;] three hours if that. Officials are not meeting the 10 hours per week. These conditions are cruel in violation of our Eighth Amendment rights… (Id. at 45, 47.)

Plaintiff was interviewed in connection with this grievance and had no additional information to add. (Id. at 50.) The grievance was denied at the First Level of Review. (Id. at 50-51.) The response letter noted that multiple attempts were made to return the facility to normal program on four separate dates (ranging from November 2018 to January 2019), but the ongoing violence between STG-Surenos and STG-Bulldogs required that the modified program be kept in place. (Id. at 51.) The Second Level of Review partially granted the grievance insofar as an inquiry into Plaintiff's request for ten hours of outdoor exercise per week was

16

considered and denied. (<u>Id.</u> at 52-53.) The Second Level of Review response noted that Program Status Reports (PSR) were issued every morning and program was adhered to unless institutional needs called for their suspension or modification. (<u>Id.</u> at 53.) Plaintiff's grievance was denied at the Third Level of Review on June 7, 2019. (<u>Id.</u> at 43-44.)

### 2.      The Second Grievance: COR-19-01246

On February 10, 2019, Plaintiff submitted grievance COR-19-01246, which was a group grievance that also included Plaintiff's cellmate, Joel Olvera. (<u>Id.</u> at 31-34.) Plaintiff described his issue as follows:

> The modified program appellant Zaiza (and STG- Surenos) have been subject to because of the incident of September 28, 2018 wherein STG-Bulldogs have been found to be the aggressive party that consist of inter alia, deprivations/restrictions of visits, canteen, yard, law library, and packages is not narrowly tailored because there are readily available less restrictive means to provide for prison security and discipline. Prison officials can provide visits on Saturdays for Surenos and Sundays for Bulldogs. Canteen already is delivered to the housing unit cell doors. Prison officials have already demonstrated they can provide Zaiza (and other Surenos inmates) with out-of-cell exercise every Thursday, why not 3 times a week, identical that of C-status program failure inmates to achieve this, rehouse all STG-Bulldogs to [Housing Units C-4 and C-5]. All the above is easily feasible because prison officials already have demonstrated this by still providing Zaiza (and Surenos? Bulldogs inmates) access to medical/mental health, law library, classification hearings etc. Without STG-Surenos and Bulldogs coming into contact of others. The CDCR has previously effectively admitted that it can serve its interests in providing for prison security and discipline without having to use race-based modified programs [cite to <u>Mitchell v. Cate</u> lawsuit].

> Contrary to CDCR exchanging the classification of Southern Hispanics to STG-Surenos, it [is] still a race-based classification nonetheless so is the modified program. (Id. at 31, 33.)

Plaintiff was interviewed in connection with his grievance and had nothing further to add. (Id. at 36.) In denying Plaintiff's grievance, the First Level of Review made a few noteworthy remarks. (Id. at 36-37.) First, it noted the original incident that formed the basis for the modified program involved an attack by STG-Bulldogs on STG-Surenos, and a return to normal program was not possible because STG-Surenos have in turn attacked STG-Bulldogs and acted as aggressors in four other incidents from September 2018 to March 2019. (Id. at 36.) Second, the First Level of Review noted that the modified program was reviewed daily with the goal of providing the least possible restrictive program. (Id.) To that end, the amount of outdoor exercise time was based on the "level of violence being demonstrated by those inmates currently under the program modification." (Id.) Fourth, the response letter noted that COR was conducting incremental releases of inmates based on their perceived threat to institutional safety and security. (Id. at 37.)  Fifth and more important, the letter mentioned that the STG-Surenos were "refusing to participate in all attempts to speak with the STG-Bulldogs" and "all attempts to resume a safe program have been met with violence." (Id.)

At the Second Level of Review, the grievance was denied for the same reasons. (Id. at 38- 39.) The grievance was denied at the Third Level of Review on August 21, 2019.  (Id. at 29-30.)

(See Deft's M to Dismiss, ECF No. 21 at 14-16.)

Here, Defendants contend that although the grievances were exhausted to the final level of review, they did not put prison officials on notice of the claims that Plaintiff now pursues *against these three particular Defendants* -- Ken Clark, Captain J. Gallagher, and D. Baughman. Defendants claim that neither of Plaintiff's grievances advances any allegations against

Defendants specifically, or complains of any actions that they took or failed to take.  Defendants argue that nowhere in either grievance does Plaintiff allege that Defendants authored, initiated, ratified, or personally maintained the modified program or any Program Status Reports.

### B.    Defendants' Burden

The court in Albino held that "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172 (citing see Hilao v. Estate of Ferdinand Marcos, 103 F.3d. 767, 778 n.5 (9th Cir. 1996.))  "[T]he respondent . . . must show that domestic remedies exist that the claimant did not use.")  Id.  Once the defendant has carried that burden, the prisoner has the burden of production.  Id.  That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.  Id. (citing see Hilao, 103 F.3d at 778 n.5.)  ("[T]he burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.").  However, the ultimate burden of proof remains with the defendant.  Id. at 1172.

### C.    Plaintiff's Opposition

Plaintiff states that he is suing defendants K. Clark (Warden), Captain Gallagher, and Baughman (Associate Director, CDCR) for violating his Eighth Amendment rights to sufficient outdoor exercise.  He filed two administrative grievances, (1) COR-18-06992 dated December 10, 2018, and (2) COR-19-01246 dated February 10, 2019.

He also notifies the court that there is an additional group appeal that he filed with over 40 STG-Surenos, which was submitted around March 2020 to Sacramento for third level review. Plaintiff alleges that he attempted to retrieve this appeal from the Chief of Inmate Appeals but they refused to send the appeal back.

Plaintiff asserts that he exhausted his remedies, that he added Defendants to the appeal, and that he gave notice to the Defendants for whom the Attorney General waived service of summons on June 11, 2020.

Plaintiff also argues that if the courts decide that Defendants' motion to dismiss be granted, that he be granted leave to amend.

### 1.   COR-18-06992

In the first grievance/appeal, Plaintiff requested more yard time because C-Facility Administrators placed STG-Surenos on a modified program. Sergeant Navarro [not a defendant] was the interviewer. As stated in the appeal, Plaintiff told Navarro that STG-Surenos were being subjected to conditions that are cruel in violation of the Eighth Amendment.

Plaintiff filed at the second level of review, dissatisfied with how Navarro had conducted the interview. Plaintiff alleges that Navarro falsified the interview dates and never attached the Program Status Report that was to be included with the appeal.

Dissatisfied with the second level response, Plaintiff filed at the third level of review in Sacramento. Plaintiff addressed the Chief of Inmate Appeals about all of the misconduct that transpired at Corcoran State Prison from the orchestrated "Gladiator Fights" and cruel conditions on the yard program.

The first level of appeal was denied; the second level was granted in part; and, the third (final) level was denied. Plaintiff contends that he exhausted all of his administrative remedies required under § 1997e(a).

### 2.   COR-19-01246  Group appeal

In the second grievance/appeal, Plaintiff addressed the deprivation of visits, canteen, yard, law library, and packages. Plaintiff again requested out of cell exercise three days a week. He also alleged that CDCR has previously admitted that it can serve its interest in providing for prison security and discipline without ever having to use race-based modified programs.

On March 3, 2019, Plaintiff was interviewed by Sergeant P. Perez [not a defendant] in the program office. During the interview, Defendant Gallagher walked into the office and was told by Sgt. Perez that Plaintiff was "the guy who filed the appeal." (ECF No. 24 at 3:24-25.) Defendant Gallagher stated, "You're not getting nowhere." (Id. at 3:25.) Plaintiff told both officers that it would be a civil matter. Plaintiff's request was denied at the first level of appeal.

Plaintiff filed a second level appeal on April 4, 2019, complaining that the yard program was worse and STG-Surenos were only receiving yard once a month.  Plaintiff added Defendants Gallagher and Clark to the appeal stating that Plaintiff had submitted a CDCR 22 request to Defendant Gallagher and a letter to Defendant K. Clark concerning the yard schedule that had not changed, and that Southern Mexicans had been denied outdoor exercise for weeks at a time. On May 10, 2019, officials denied the appeal.  He added Defendants Clark and Gallagher to the appeal due to their supervisory liability.   He argues that he was within his rights under Title 15 rules and regulations to add these Defendants to his prison appeal.

On May 20, 2019, Plaintiff filed his appeal for a third level review.  His appeal was denied on September 21, 2019, as exhausted.

### D.   Defendants' Reply

In reply to Plaintiff's opposition, Defendants argue that the First Amended Complaint should be dismissed because Plaintiff's opposition was late, Plaintiff has conceded that he cannot state an Eighth Amendment Claim, and neither of Plaintiff's grievances put officials on notice of Plaintiff's claims against Defendants.

### E.   Discussion

Here, Plaintiff is held to a less stringent standard because he is proceeding *pro se*. see Haines, 404 U.S. at 520, and therefore the Court shall not consider dismissing Plaintiff's complaint because his opposition to the motion to dismiss was late.

Importantly, A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress.  Sapp, 623 F.3d at 824.  To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations.  Id. (citing Jones, 549 U.S. at 218. The California regulations at the time of Plaintiff's grievances (2018-2019) required that an inmate to "describe the specific issue under appeal and the relief requested." Cal.Code Regs. tit. 15, § 3084.2(a).  Id.

Since their 2011 amendment, California regulations require a grievance to "list all staff member(s) involved and . . .  describe their involvement in the issue," and to "include the staff member's last name, first initial, title or position, if known."  15 Cal. Code Regs. §

3084.2(a)(3).  If the inmate does not have the requested identifying information, he must provide "any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question."  Id.  Silva v. Blagg, No. CV 16-960-R (AGR), 2019 WL 1744216, at *7 (C.D. Cal. Jan. 18, 2019), report and recommendation adopted, No. CV 16-960-R (AGR), 2019 WL 3064467 (C.D. Cal. Mar. 13, 2019).  However, the Ninth Circuit has held that "a prisoner exhausts such administrative remedies as are available . . . under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process."  Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016); see also Franklin v. Foulk, 2017 WL 784894, at *4-5 (E.D. Cal. Mar. 1, 2017); Franklin v. Lewis, 2016 WL 4761081, at *6 (N.D. Cal. Sept. 13, 2016).

Thus, a prisoner's failure to list all staff members involved in an incident in his inmate grievance, or to fully describe the involvement of staff members in the incident, will not necessarily preclude his exhaustion of administrative remedies.  Reyes, 810 F.3d at 958; Franklin, 2017 WL 784894, at *4 ("[T]he court in Reyes found that even though the plaintiff's grievance failed to name two physicians on the prison's three-person pain committee, prison officials were put on notice of the nature of the wrong alleged in the suit — that the plaintiff was wrongfully denied pain medication."); Franklin, 2016 WL 4761081, at *6 ("[T]o the extent Defendants argue that Plaintiff failed to comply with a procedural requirement by not naming Defendants in [his appeal], this deficiency is not necessarily fatal to Plaintiff's claim pursuant to Reyes"); Grigsby v. Munguia, No. 2:14-cv-0789 GAB AC P, 2016 WL 900197, at *11-12 (E.D. Cal. Mar. 9, 2016); see also Bulkin v. Ochoa, 2016 WL 1267265, at *1-2 (E.D. Cal. Mar. 31, 2016).  Martinez v. Navarro, No. 119CV00378NONEGSAPC, 2021 WL 5234626, at *3 (E.D. Cal. Nov. 10, 2021).

Here, Defendants do not dispute that Plaintiff's administrative appeal No. COR-19-01246 exhausted his administrative remedies to the third and final level of review with respect to his exercise claims.  In fact, they allege that grievance COR-18-06992 challenges the allegedly inadequate outdoor exercise time from September 28, 2018 (the date of the original incident between the STG-Bulldogs and STG-Surenos) to December 10, 2018 (the date when Plaintiff

submitted the grievance).  (ECF No. 21 at 18:6-9.)  Defendants contend, however, that the appeal did not exhaust Plaintiff's administrative remedies with respect to his claims against the specific Defendants.  Defendants argue that neither of Plaintiff's grievances advances allegations against Defendants specifically.

While the court acknowledges that Plaintiff's grievances do not specifically allege that each named Defendant personally acted against Plaintiff through their participation in the Modified Programs, the court nonetheless finds that Plaintiff's second grievance, COR-19-01246, sufficiently placed Defendants Gallagher and Clark on notice of Plaintiff's claims that he had been denied outdoor exercise for weeks at a time.  In addition, Plaintiff alleges that he sent a letter and Form 22 to Defendants Warden Clark and Captain Gallagher, respectively, providing notice of insufficient outdoor exercise.  Although letters and Form 22 requests are insufficient to exhaust remedies, this fact together with Plaintiff's grievances cause an inference that Defendants Clark and Gallagher knew about the limits on outdoor exercise in the Modified Program.

With respect to Defendant Baughman, however, the court finds no such notice in either of Plaintiff's grievances of Plaintiff's claims against Defendant Baughman.  Not only was Defendant Baughman not named in either of the grievances, there is nothing to cause a reasonable inference that Defendant Baughman, as Associate Director of the CDCR and located in Sacramento, would have received notice of Plaintiff's exercise claims against officials at Corcoran State Prison.

Therefore, the court finds that Plaintiff's grievance COR-19-01246 exhausted his claims for inadequate outdoor exercise against Defendants Gallagher and Clark, but not against Defendant Baughman.  The court thus will recommend that Defendant Baughman and the claims against him be dismissed for failure to exhaust.

## VI.   DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE AN EIGHTH AMENDMENT CLAIM FOR INSUFFICIENT OUTDOOR EXERCISE

### A.   Eighth Amendment Deprivation of Exercise -- Legal Standard

Prison officials may violate the Eight Amendment's prohibition on cruel and unusual punishments if they deprive the inmate of "a single, identifiable human need such as food,

warmth *or exercise*." Wilson v. Seiter, 501 U.S. 294, 304, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (emphasis added); Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010) ("[E]xercise is one of the most basic human necessities protected by the Eighth Amendment."). To sufficiently allege an Eighth Amendment violation, however, the inmate must "objectively show that he was deprived of something 'sufficiently serious,'" and "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009) (quoting Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

"[O]rdinarily the lack of outside exercise for extended periods is a sufficiently serious deprivation" for Eighth Amendment purposes. LeMaire v. Maas, 12 F.3d 1444, 1457 (9th Cir. 1993). A prohibition on outdoor exercise of six weeks is a "sufficiently serious" deprivation to support an Eighth Amendment claim. See, e.g., Lopez, 203 F.3d at 1132-33; Allen v. Sakai, 48 F.3d 1082, 1086 (1994).

If the inmate alleges facts sufficient to show that his deprivation was objectively sufficiently serious, he must next "make a subjective showing that the deprivation occurred with deliberate indifference to [his] health or safety." Foster, 554 F.3d at 812 (quoting Farmer, 511 U.S. at 834). Deliberate indifference involves a two-part inquiry. First, the inmate must show that the prison officials were aware of a "substantial risk of serious harm." Thomas, 611 F.3d at 1150 (quoting Farmer, 511 U.S. at 837). This part of the inquiry may be satisfied if plaintiff "shows that the risk posed by the deprivation is obvious." Id. Second, the inmate must "show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." Id. (quoting Farmer, 511 U.S. at 844).

///

Thus, the Ninth Circuit has specifically identified these types of conditions claims as "context-sensitive," Richardson v. Runnels, 594 F.3d 666, 673 (9th Cir. 2010), for they require consideration of the "individual facts of each case," id., including the length and severity of the deprivation, the circumstances giving rise to it, and the deference owed to prison officials charged with both a "duty to keep inmates safe" and the need to establish order and security, which must

be "balance[d] . . . against other obligations that our laws impose." See Norwood v. Vance, 591 F.3d 1062, 1068-1070 (9th Cir. 2010), pet. for cert. filed, 78 U.S.L.W. 3612 (April 7, 2010) (No. 09-1215) [cert. denied, 131 S. Ct. 1465, 179 L. Ed. 2d 299 (2011)].  In short, because "a prisoner's right to outdoor exercise is [not] absolute and indefeasible, [nor does] it trump all other considerations," id. at 1068, it usually "require[s] a full consideration of context, and thus, a fully developed record." Richardson, 594 F.3d at 672 (citing Norwood, 591 F.3d at 1062).

**B.**   **Discussion**

Defendants allege that Plaintiff has conceded that he cannot state an Eighth Amendment Claim because Defendants presented arguments that Plaintiff failed to state an Eighth Amendment claim based on the denial of outdoor exercise (See ECF No. 21 at 13-20), and Plaintiff's opposition is silent on this argument, (See ECF No. 24).

The court disagrees that Plaintiff has conceded that he cannot state an Eighth Amendment claim.  On April 20, 2021, the Court found that Plaintiff's allegations in the First Amended Complaint were sufficient to state a cognizable Eighth Amendment claims for insufficient outdoor exercise against Defendants Clark, Gallagher, and Baughman.  (ECF No. 13 at 16-18.) In performing this screening, the court was required to liberally construe Plaintiff's pleadings because he is proceeding *pro se*.  See Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (citing Boag v. MacDougall, 454 U.S. 364, 365 (1982)) (per curiam).  In reviewing a *pro se* complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint  Erickson, 551 U.S. at 94; see also Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (quoting Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)) ("where the petitioner is *pro se*, particularly in civil rights cases, [courts should] construe the pleadings liberally and . . . afford the petitioner the benefit of any doubt."); United States v. Qazi, 975 F.3d 989, 992–93 (9th Cir. 2020) ("It is an entrenched principle that *pro se* filings however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers.") (citations and internal quotations omitted).  When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  At the screening stage the issue is not whether plaintiff will ultimately prevail, but

whether he is entitled to offer evidence to support his claims.   Kessler v. Ierokormos, No. 219CV01738KJMDBP, 2021 WL 694925, at *3 (E.D. Cal. Feb. 23, 2021), report and recommendation adopted sub nom; Kessler v. Ierokormos., No. 219CV01738KJMDBP, 2021 WL 2941539 (E.D. Cal. July 13, 2021) (citing Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

The court therefore is not persuaded by defendants argument to change  its earlier findings and recommendations issued on February 18, 2021, (ECF No. 13), which were adopted in full by the district court on April 20, 2021, (ECF No. 15).  Accordingly, the court shall recommend that Plaintiff be permitted to proceed with his Eighth Amendment claims against Defendants Clark and Gallagher.

## VII.   PUNITIVE DAMAGES

Defendants argue that Plaintiff's request for punitive damages should be denied because "he does not allege that Defendants were malicious, or that they had knowledge of any adverse health effects caused by restricted outdoor exercise time."  (ECF No. 21 at 35 ¶ 4.)

"Punitive damages may be assessed in § 1983 actions 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"  Castro v. Cty. of Los Angeles, 797 F.3d 654, 669 (9th Cir. 2015), reh'g en banc granted, 809 F.3d 536 (9th Cir. 2015), and on reh'g en banc, 833 F.3d 1060 (9th Cir. 2016), cert. denied sub nom Los Angeles Cty., Cal. v. Castro, 137 S. Ct. 831, 197 L. Ed. 2d 69, 2017 LEXIS 880, 2017 WL 276190 (Mem) (U.S. Jan. 23, 2017) (quoting Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).  "'[T]his threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness,' because to award punitive damages, the jury must make both a factual determination that the threshold was met and 'a moral judgment' that further punishment was warranted."  Id. (quoting Smith, 461 U.S. at 52-53, 56 (recognizing that where the underlying standard of liability is recklessness, a tortfeasor may be subject to both compensatory and punitive damages without any additional culpable conduct).  The Ninth Circuit has held that the decision to impose punitive damages is "within the exclusive province of the jury."  Id. at 670

(quoting <u>Runge v. Lee</u>, 441 F.2d 579, 584 (9th Cir. 1971).  In this court, in prisoner civil rights cases such as the present case, the decision whether to award damages is ordinarily made by the jury at trial.

Recent court decisions have held that because a prayer for relief is a remedy and not a claim, a Rule 12(b)(6) motion to dismiss for failure to state a claim is not a proper vehicle to challenge a plaintiff's prayer for punitive damages, because Rule 12(b)(6) only countenances dismissal for failure to state a claim.  Fed. R. Civ. P. 12(b)(6); <u>see</u>, <u>e.g.</u>, <u>Jordan v. United States</u>, No. 15-cv-1199 BEN (NLS), 2015 U.S. Dist. LEXIS 138604, 2015 WL 5919945, at *2-3 (S.D. Cal. Oct. 8, 2015) ("A prayer for damages constitutes a remedy, not a claim" within the meaning of Rules 8(a)(2) or 12(b)(6).  Thus, [a] prayer for relief does not provide any basis for dismissal under Rule 12.") (quoting <u>Oppenheimer v. Southwest Airlines Co.</u>, No. 13-CV-260-IEG (BGS), 2013 U.S. Dist. LEXIS 85633, 2013 WL 3149483, at *3-4 (S.D. Cal. June 17, 2013) ("[T]he availability of [a certain type of relief does not] control or even pertain to the sufficiency of any claim."); <u>accord</u> <u>Shimy v. Wright Med. Tech., Inc.</u>, No. 2:14-cv-04541-CAS (RZx), 2014 U.S. Dist. LEXIS 101479, 2014 WL 3694140, at *4 (C.D. Cal. July 23, 2014); <u>Monaco v. Liberty Life Assur. Co.</u>, No. C06-07021 MJJ, 2007 U.S. Dist. LEXIS 11741, 2007 WL 420139, at *6 (N.D. Cal. Feb. 6, 2007) ("[A] complaint is not subject to a motion to dismiss for failure to state a *claim* under Rule 12(b)(6) because the prayer seeks relief that is not recoverable as a matter of law." (emphasis in original); <u>see</u> <u>Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.</u>, 21 F.Supp.3d 620, 629 (W.D. Va. 2014) (Rule 12(b)(6) does not provide a vehicle to dismiss a portion of relief sought or a specific remedy, but only to dismiss a claim in its entirety); <u>also</u> <u>see</u> <u>Schmidt v. C.R. Bard, Inc.</u>, No. 6:14-cv-62, 2014 U.S. Dist. LEXIS 146459, 2014 WL 5149175, at *7-8 (S.D. Ga. Oct. 14, 2014) (noting that a Rule 12(b)(6) motion is improper for dismissal of a prayer for relief, and disagreeing with cases to the contrary); <u>Douglas v. Miller</u>, 864 F.Supp.2d 1205, 1220 (W.D. Okla. 2012) ("With respect to the issue of punitive damages, whether such damages are recoverable is not a proper subject for adjudication in a Rule 12(b)(6) motion, as the prayer for relief is not a part of the cause of action."); <u>Rathbone v. Haywood Cnty.</u>, No. 1:08cv117, 2008 U.S. Dist. LEXIS 108471, 2008 WL 2789770, at *1 (W.D.N.C. July 17, 2008)

("punitive damages is not a 'cause of action' subject to dismissal under Rule 12(b)(6)."); In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigations, 517 F.Supp.2d 662, 666 (S.D.N.Y. 2007) ("Punitive damages are not a claim and thus it makes little sense for defendants to move to dismiss [ ] *claims* for punitive damages.") (emphasis in original); Benedetto v. Delta Air Lines, Inc., 917 F.Supp.2d 976, 984 (D.S.D. Jan. 7, 2013) ("punitive damages are a form of relief and not a 'claim' that is subject to a Rule 12(b)(6) motion to dismiss"); Security Nat. Bank of Sioux City, Iowa v. Abbott Labs., 2012 U.S. Dist. LEXIS 11929, 2012 WL 327863, at *21 (N.D. Iowa Feb. 1, 2012) ("punitive damages are not a cause of action, and as such . . . they are not subject to a motion to dismiss.").

Federal Rule of Civil Procedure 54 underscores the impropriety of dismissing requests for punitive damages under Rule 12(b)(6).  Rule 54(c) states that "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).  It thus makes little sense to require detailed factual allegations to support a demand for certain damages when such damages may ultimately be awarded even if they were never pled in the complaint.  See Soltys v. Costello, 520 F.3d 737, 742 (7th Cir. 2008) (noting that "Rule 54(c) contemplates an award of punitive damages if the party deserves such relief — whether or not a claim for punitive damages appears in the complaint" and thus describing as a "fundamental legal error" "the assumption that a prayer for punitive damages had to appear in the complaint in order to sustain an award of such damages.").

Accordingly, based on the foregoing, Plaintiff's request for punitive damages in regard to his 42 U.S.C. § 1983 claims cannot be dismissed under Rule 12(b)(6), and therefore Defendant's 12(b)(6) motion to dismiss Plaintiff's request should be denied.

///

///

## VIII.   QUALIFIED IMMUNITY

Finally, Defendants contend they are entitled to qualified immunity from Plaintiff's Eighth Amendment outdoor exercise claim.  "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was

clearly established at the time of the challenged conduct." <u>Reichle v. Howards</u>, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012).  In resolving a claim for qualified immunity, the Court addresses two questions: (1) whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the officials' actions violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the incident and "in light of the specific context of the case." <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled on other grounds by* <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).  These questions may be addressed in the order most appropriate to "the circumstances in the particular case at hand." <u>Pearson</u>, 555 U.S. at 236.  Because the Court has already determined that Plaintiff has adequately stated that Defendants violated his constitutional right to outdoor exercise, the dispositive issue here is the second one.

A claim is generally not amenable to dismissal under Rule 12(b)(6) on qualified immunity grounds because facts necessary to establish qualified immunity generally must often be shown by matters outside the complaint.  <u>See</u> <u>Morley v. Walker</u>, 175 F.3d 756, 761 (9th Cir. 1999).  A dismissal on grounds of qualified immunity on a Rule 12(b)(6) motion is not appropriate unless it can be determined "based on the complaint itself, that qualified immunity applies." <u>Groten v. California</u>, 251 F.3d 844, 851 (9th Cir. 2001); <u>Rupe v. Cate</u>, 688 F. Supp. 2d 1035, 1050 (E.D. Cal. 2010) (denial of qualified immunity because it could not be clearly determined on the face of the complaint, but the court stated the ground could be raised by way of a motion for summary judgment).

Defendants contend that they are entitled to qualified immunity here because "it is well established that an officer's compliance with — or enforcement of — government statutes, regulations, and official directives presumptively entitles that officer to qualified immunity from any resulting constitutional violation." <u>Acosta v. City of Costa Mesa</u>, 718 F.3d 800, 823–24 (9th Cir. 2013).  They contend that this includes a prison official's reliance on and enforcement of state regulations (e.g.: Title 15 regulations) and official CDCR directives.[10]  Defendants argue

---

[10] Title 15 of the California Code of Regulations holds that a modified program may be implemented independently, in response to an incident or unusual occurrence, or as a facility transitions

that they would not have known that their conduct violated Plaintiff's rights or that their alleged conduct was unconstitutional. (Id.) However, Defendants are not immune from suit simply because Plaintiff refers to a policy which denied him adequate outdoor exercise.

At this stage of the proceeding, the Court may only consider whether the facts as alleged in the First Amended Complaint plausibly state a claim and whether that claim asserts a violation of a clearly established right. As the Court has found (above) that Plaintiff states cognizable claims against Defendants under the Eighth Amendment, it cannot be determined based on the face of the First Amended Complaint that qualified immunity applies to shield Defendants from liability. The determination of whether Plaintiff's constitutional rights were violated, and whether a reasonable official would have known that compliance with title 15 of the California Code of Regulations, which holds that a modified program may be implemented independently in response to an incident or unusual occurrence, or as a facility transitions from lockdown to regular programming, Cal. Code Regs. tit. 15, § 3000, violated Plaintiff's Eighth Amendment rights to sufficient outdoor exercise, necessarily hinges on further development of the facts. Accordingly, Defendants' motion to dismiss based on qualified immunity should be denied.

## IX. CONCLUSION AND RECOMMENDATIONS

The court finds that Defendants' 12(b)(6) motion to dismiss Plaintiff's First Amended Complaint should be granted in part and denied in part. Defendants' motion to dismiss Plaintiff's claims should be denied, with the exception of Plaintiff's claims against Defendant Baughman, which should be dismissed based on Plaintiff's failure to exhaust his administrative remedies for his claims against Defendant Baughman.

///

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.    Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's First Amended Complaint, filed on September 10, 2021, be granted in part and denied in part;

---

from lockdown to regular programming. Cal. Code Regs. tit. 15, § 3000. During modified programs, imposed restrictions may "fluctuate as circumstances dictate with the goal of resuming regular programming as soon as it is practical." Id.

2.      Defendants' motion to dismiss Plaintiff's claims against Defendant Baughman, based on Plaintiff's failure to exhaust administrative remedies for his claims against Defendant Baughman, be granted;

3.      Plaintiff's claims against Defendant Baughman be dismissed from this case;

4.      Defendants' motion to dismiss Plaintiff's claims against Defendants Clark and Gallagher be denied;

5.      Defendants Clark and Gallagher be required to file a responsive pleading to the First Amended Complaint within thirty days of the date of service of this order;

6.      The Clerk of Court be directed to reflect the dismissal of Defendant Baughman from this case on the court's docket; and

7.      This case be referred back to the magistrate judge for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after the date of service of these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed **within ten (10) days** after the date the objections are filed. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __December 9, 2021__       __/s/ Gary S. Austin__
                                              UNITED STATES MAGISTRATE JUDGE